IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Carolyn Marshall, | ) | Civil Action No. 8:11-cv-02806-RBH-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"). For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

In April 2009, Plaintiff filed an application for DIB, alleging an onset of disability date of September 5, 2006.[2] [R. 138–39.] The claim was denied initially [R. 114–15, 118–21] and on reconsideration by the Social Security Administration ("the Administration") [R. 116–17, 123–24]. On December 14, 2009, Plaintiff requested a hearing before an

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Plaintiff's onset of disability date was later amended to February 15, 2008. [*See, e.g.*, R. 164 (disability report completed by field office).]

administrative law judge ("ALJ") [R. 125–26], and on August 4, 2010, ALJ Alice Jordan conducted a de novo hearing on Plaintiff's claims [R. 63–113].

The ALJ issued a decision on August 27, 2010, finding Plaintiff not disabled. [R. 16–23.] At Step 1,[3] the ALJ determined Plaintiff last met the insured status requirements on September 30, 2008 and had not engaged in substantial gainful activity between February 15, 2008 and September 30, 2008, the period between Plaintiff's alleged onset date and her date last insured. [R. 18, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had a severe impairment of multiple sclerosis. [R. 18, Finding 3.] The ALJ also found Plaintiff's depression and bipolar disorder were non-severe impairments, with only mild impairment of Plaintiff's activities of daily living, social functioning, and concentration, persistence, and pace, and no episodes of decompensation of extended duration. [R. 18–19.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; the ALJ specifically considered Listing 11.09. [R. 19, Finding 4.]

At Step 4, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work, with the following specific findings:

> [Plaintiff] can stand, walk and sit 6 hours, each, of an 8 hour workday. She can lift/carry 10 pounds frequently and 20 pounds occasionally. She has frequent use of left upper and lower extremity; dominant hand. She can frequently push and pull with the left upper extremity and left lower extremity. She can frequently reach, handle and finger with left arm. She would never climb ladders, occasionally climb stairs, climbing,

---

[3] The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> crouching and crawling. She can frequently kneel, stoop and
> balance. She must avoid concentrated exposure to extreme
> heat, cold, humidity, noise, vibrations and fumes. She must
> avoid concentrated exposure to hazards. She can frequently
> interact with the public.

[R. 20, Finding 5.] The ALJ determined Plaintiff was capable of performing her past relevant work of payroll worker and tax preparer (non-kiosk) because her RFC did not preclude the performance of work-related activities required by these jobs. [R. 22, Finding 6.] The ALJ also made alternative findings and proceeded to Step 5 of the sequential analysis; specifically, the ALJ found that, although Plaintiff could perform her past relevant work, there were also other jobs existing in significant numbers in the national economy that Plaintiff could perform. [R. 23.] Based on her findings, the ALJ determined Plaintiff was not disabled under the Act. [R. 23, Finding 7.]

Plaintiff requested Appeals Council review of the ALJ's decision [*see* R. 12], but the Council declined review [R. 1–6]. Plaintiff filed this action for judicial review on October 17, 2011. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ erred by

(1) ignoring the relevant lay witness statement of Plaintiff's employer, which stated Plaintiff's employer was making special accommodations and established Plaintiff could not work [Doc. 9 at 15–17; Doc. 11 at 1–5];

(2) improperly determining Plaintiff was not entirely credible [Doc. 9 at 17–24; Doc. 11 at 5–9]; and

(3) failing to properly weigh the opinion of Plaintiff's treating psychiatrist [Doc. 9 at 25–29; Doc. 11 at 9–11].

The Commissioner contends substantial evidence supports the ALJ's decision that Plaintiff was not disabled under the Act [Doc. 10 at 8–9], specifically arguing the ALJ reasonably

(1) considered all of the record evidence [*id.* at 9–11];

(2) evaluated Plaintiff's credibility [*id.* at 11–16]; and

(3) evaluated the opinion of Plaintiff's treating psychiatrist [*id.* at 16–17].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76

F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir.

1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision.  *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material

6

> and that there is good cause for the failure to incorporate such
> evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

---

[4] Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

**APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day

of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that,

when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C. *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D. *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind

---

[5]Residual functional capacity is "the most [a claimant] can do despite [his] limitations." 20 C.F.R. § 404.1545(e)

of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.   *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).   To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").   Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6]   20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).   When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the

---

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a.  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  *Id.*

[Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the

ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of

the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which

could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman*, 829 F.2d at 518. The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable

> objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI. Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*,

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

### Lay Witness Statement

Plaintiff contends the ALJ erred by ignoring the statement provided by Plaintiff's former employer. [Doc. 9 at 15–17; Doc. 11 at 1–5.] Plaintiff argues the employer's statement is enough to establish Plaintiff was disabled because the employer indicated Plaintiff was given special assistance and accommodations to be able to complete her job. [Doc. 9 at 15–16.] The Court is not convinced the ALJ ignored this evidence, and to the extent the ALJ erred by failing to discuss this evidence in her decision, the ALJ's error is harmless.

An ALJ is not required to address every piece of evidence in a file. *See Brewer v. Astrue*, No. 7:07-CV-24-FL, 2008 WL 4682185, at *3 (E.D.N.C. Oct. 21, 2008) (collecting cases addressing this point). Rather, "so long as the narrative opinion *is sufficien[tl]y detailed and cogent on the ultimate issues* for the reviewing court to follow the ALJ's logic and reasoning and supported by substantial evidence in the record, then the lack of specific findings on more subordinate issues . . . does not require reversal." *Mellon v. Astrue*, No. 4:08-2110-MBS, 2009 WL 2777653, at *13 (D.S.C. Aug. 31, 2009) (emphasis added). Further, the Administration has determined,

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from *these* "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006) (emphasis added). Thus, the Administration has failed to mandate that ALJs explain the weight given to sources such as employers, who do not fall into the two categories mentioned in the above-quoted Ruling. *See id.* at *3 (stating that non-medical sources who have had contact with the individual in their professional capacity are sources such as teachers, school counselors, and social welfare agency personnel who are not health care providers, while employers are merely "other sources").

Here, the ALJ did not specifically mention the evidence provided by Plaintiff's former employer, entitled Employer Work Activity Questionnaire. [*See* R. 18–23 (ALJ's findings of fact and conclusions of law); R. 161–62 (employer questionnaire).] However, the ALJ included the following statement: "I have carefully read and considered all the evidence regardless of whether it is specifically cited in this decision." [R. 21.] While the Court would be reluctant to find such a blanket statement excuses a clear failure to discuss relevant evidence that could reasonably have an impact on the ALJ's decision, in this case, the questionnaire that was not discussed or cited by the ALJ likely would not impact the

ALJ's decision because the questionnaire is at best ambiguous and at worst internally conflicting. Most notably, the employer indicated that Plaintiff completed all the usual duties required for her position and completed her work in the same amount of time as employees in similar positions, which seems to contradict the employer's later indication that Plaintiff's productivity was 60% of other employee's productivity. [*See* R. 161–62.] Thus, the ALJ was under no obligation to specifically mention this evidence. *See Mellon*, 2009 WL 2777653, at *13; *Brewer*, 2008 WL 4682185, at *3; SSR 06-03p, 2006 WL 2329939, at *6.

Further, to the extent the ALJ erred by not mentioning the questionnaire, the error is harmless because there is no indication the questionnaire would change the outcome of the decision. *See, e.g.*, *Perdue v. Astrue*, 2011 WL 6415490, at *17 (S.D.W. Va. Dec. 21, 2011) ("[C]ourts have applied a harmless error analysis to administrative decisions that do not fully comport with the procedural requirements of the agency's regulations, but for which remand would be merely a waste of time and money. In general, remand of a procedurally deficient decision is not necessary absent a showing that the [complainant] has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses . . . [, which] constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." (internal quotation marks and citation omitted)); *see also Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision

19

reached." (internal quotation marks and citation omitted)).  Therefore, the Court concludes

the ALJ's failure to discuss the questionnaire completed by Plaintiff's former employer is

not a sufficient basis for reversing the ALJ's decision and remanding this case or awarding

benefits.[7]

**Credibility Determination**

Plaintiff contends the ALJ's credibility determination is not supported by substantial

evidence because Plaintiff's attempts to work, activities, and the descriptions of Plaintiff's

impairments as stable did not provide a basis for finding Plaintiff was not entirely credible.

[Doc. 9 at 17–24; Doc. 11 at 5–9.]  The Court disagrees.

Whenever a claimant's statements about the intensity, persistence, or functionally

limiting effects of pain or other symptoms are not substantiated by objective medical

evidence, the ALJ must make a finding on the credibility of the claimant's statements

based on a consideration of the entire case record.  SSR 96-7p, 61 Fed. Reg. at 34,485.

The credibility determination "must contain specific reasons for the finding on credibility,

supported by the evidence in the case record, and must be sufficiently specific to make

clear to the individual and to any subsequent reviewers the weight the adjudicator gave to

---

[7] Plaintiff also argues that a second statement submitted by her employer, which Plaintiff presented to the Appeals Council but not the ALJ, supports the lay witness questionnaire before the ALJ and establishes Plaintiff could not perform work-related activity.  [Doc. 9 at 15 n.5; Doc. 11 at 1–5.]  This second statement expresses that the employer would not rehire Plaintiff due to "customer service issues," not because Plaintiff could not perform the requirements of the job.  [R. 231.]  Thus, the Court concludes this second statement also would not change the ALJ's decision and, therefore, does not provide a sufficient basis to remand this case or award benefits.  *See Meyer v. Astrue*, 662 F.3d 700, 706 (4th Cir. 2011) (noting weight afforded treating physician opinions and remanding case for consideration of treating physician opinion, where no treating physician opinion was before the ALJ, because "no fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record" but also noting "the lack of such additional fact finding does not render judicial review 'impossible'—as long as the record provides 'an adequate explanation of [the Commissioner's] decision'" (alteration in original) (citation omitted)).

the individual's statements and the reasons for that weight." *Id.*; *see also Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the evidence informing the ALJ's conclusions").

Here, the ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but the degree of limitation Plaintiff alleged was not supported by the evidence. [R. 21–22.] In her assessment of Plaintiff's residual functional capacity, the ALJ considered Plaintiff's impairments of multiple sclerosis and bipolar disorder[8] and Plaintiff's symptoms, including confusion and difficulty focusing. [R. 20–22.] The ALJ gave the following reasons for discrediting Plaintiff's testimony about the degree of her limitation:

> I must address [Plaintiff's] overall credibility with respect to all of her allegations. Most tellingly, the record reveals that [Plaintiff's] allegedly disabling impairment was present at approximately the same level of severity prior to the alleged onset date. The fact that the impairment did not prevent [Plaintiff] from working at that time strongly suggests that it would not currently prevent work. Likewise, [Plaintiff] testified that she looked for work in December 2008, but was not hired. This suggests that if she had been hired, perhaps [Plaintiff] would not currently be claiming disability, and that the reason for [Plaintiff's] continued unemployment is not solely the alleged impairment.
>
> Moreover, [Plaintiff's] longitudinal medical history is not necessarily consistent with her allegation of disability.

---

[8] Neurologist Patti J. Patterson, M.D., first evaluated Plaintiff on September 10, 1996 for multiple symptoms, including headaches, left leg problems, right eye dilatation and visual problems, coordination problems, and emotional changes. [R. 269; *see* R. 269–71.] Dr. Patterson eventually diagnosed Plaintiff with multiple sclerosis ("MS"). [R. 264, 278–79, 320–27.] Dr. Patterson treated Plaintiff on a regular basis through at least January 2010. [*See* R. 237–71, 275–79, 283–84, 338–42, 393–401.]

On September 22, 2003, Jacqueline Mouzon, M.D., performed an initial examination of Plaintiff following Plaintiff's hospitalization for a psychotic episode. [R. 419–20.] Plaintiff was diagnosed with bipolar disorder. [R. 420.] Dr. Mouzon continued to follow Plaintiff for treatment of her bipolar disorder through at least March 2010. [*See* R. 348–54, 390–92, 402–20.]

> [Plaintiff] has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. As noted above, she is not limited by her daily activities.[9] Furthermore, [Plaintiff] has not provided convincing details regarding factors, which precipitate the allegedly disabling symptoms.

[R. 20–21.]

Plaintiff has failed to direct the Court to record evidence sufficient to contradict the ALJ's findings,[10] and upon review of the record, the Court concludes the ALJ's credibility determination is supported by substantial evidence. As the ALJ noted, the record fails to reveal a change in the severity of Plaintiff's impairments or symptoms between the time she was working—just prior to the relevant period—and the relevant period.[11] [*See, e.g.*, R. 237–46, 338–42, 348–54, 390–92, 398–420.] Further, neither Plaintiff's treating

---

[9] At Step 2, the ALJ had determined Plaintiff's mental impairment imposed mild limitation in the functional area of activities of daily living, finding Plaintiff cared for her two horses and dog, did household chores, cooked meals, grocery shopped, mowed the yard with a riding mower, attended to her garden, and watched television. [R. 19.]

[10] Rather than highlighting evidence that directly supports her allegations, Plaintiff attempts to demonstrate that her testimony and other allegations of limitations precluding work activity are consistent with the record. [Doc. 9 at 17–24; Doc. 11 at 5–9.] However, as explained below, it was the ALJ's duty to determine whether Plaintiff's allegations were credible, and as the evidence goes both ways, the Court cannot conclude the ALJ's decision is not supported by substantial evidence without more from Plaintiff. *See Craig*, 76 F.3d at 589 (stating that where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court); *Grant*, 699 F.2d at 191 (stating the claimant bears the burden of production and proof through the fourth step of the sequential analysis, and if the inquiry reaches the fifth step, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform).

[11] The Court notes one exception. Plaintiff worked at H&R Block, during tax season, from January 2002 until February 2008—that is, just prior to her alleged onset of disability. [R. 161.] As previously stated, in September 2003, Plaintiff experienced a psychotic break, which prompted treatment for bipolar disorder. [R. 295–317, 418–20.] The treatment notes of Plaintiff's treating psychiatrist do not reveal significant changes in Plaintiff's mental impairment since Plaintiff recovered from the September 2003 episode. [*See* R. 348–54, 390–92, 402–20.] Moreover, there is some evidence in the record that the psychotic episode was related to Plaintiff's marijuana use [R. 338–41, 398; *see* R. 244, 418], and Plaintiff stopped using marijuana after the episode [R. 78, 342]. Because of the length of time between this psychotic episode and the relevant period, as well as the lack of evidence of a disabling mental impairment or symptoms since this episode, the Court concludes this episode had little bearing on Plaintiff's mental state and her ability to work during the relevant period.

neurologist nor Plaintiff's treating psychiatrist noted that Plaintiff's impairments or symptoms would impair her ability to work. [*See id.*]

Moreover, Plaintiff supplied the following description of her daily activities:

> Watch news and drink a cup of coffee, feed 2 horses and fill a wheelbarrow with manure and dump it, eat cereal or toast and egg, wash load of clothes, do an outdoor activity such as 30 minute horse ride and groom, or mow lawn, or mend pasture fence or inspect small vegetable garden, or go run an errand. Eat leftovers for lunch then check my e-mail and dry the laundry while I take my nap. Fold clothes and put away downstairs laundry. Clean kitchen. Do an outdoor chore such as sweep a room. Feed the horses and dog. Make dinner, eat and clean up kitchen, watch TV, take meds.

[R. 184.] Plaintiff also indicated she keeps up with paperwork and bills, drives, shops, goes to church, and goes to club meetings. [R. 186–88.] Plaintiff's hearing testimony somewhat contradicts her written report. [*See* R. 74–78, 82–84 (stating fairly similar activities as those listed but adding that she needed rest periods and a long afternoon nap).] It was the ALJ's duty to resolve conflicts in the evidence, *see Craig*, 76 F.3d at 589, and the ALJ resolved the conflicts in Plaintiff's self-report and testimony in favor of a RFC that would allow Plaintiff to perform light work [R. 21 (holding Plaintiff was not credible to the extent her statements regarding the intensity, persistence, and limiting effects of her symptoms were inconsistent with the ALJ's RFC assessment)]. Without sufficient evidence contradicting the ALJ's decision, and with substantial evidence supporting the ALJ's decision, the Court cannot second guess the ALJ's credibility determination. *See, e.g., Craig*, 76 F.3d at 589; *Laws*, 368 F.2d at 642; *Snyder*, 307 F.2d at 520. Therefore, the Court concludes Plaintiff is not entitled to a remand or an award of benefits based on the ALJ's credibility analysis.

**Treating Psychiatrist Opinion**

Plaintiff argues the ALJ improperly weighed the opinion of Plaintiff's treating psychiatrist, Dr. Jacqueline Mouzon, by failing to provide logical or legally sufficient reasons for discounting Dr. Mouzon's opinion. [Doc. 9 at 25–29; Doc. 11 at 9–11.] The Court disagrees.

An ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While an ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position," *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). Finally, an ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity. 20 C.F.R. § 404.1527(e).

"[B]ecause the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant," the general rule is that a claimant's treating physicians' opinions are afforded great weight. *Johnson*, 434 F.3d at 654 (quoting *Mastro*, 270 F.3d at 178). An ALJ, though, can give a treating physician's opinion less weight "in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178. Further, in undertaking review of the ALJ's treatment of a claimant's treating physicians' opinions, the reviewing court must remain mindful that its review is focused on whether the ALJ's opinion is supported by substantial evidence and that its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589.

Here, the ALJ discounted Dr. Mouzon's May 18, 2010 assessment of Plaintiff's mental impairment because it was not supported by Plaintiff's medical records and was inconsistent with the record as a whole. [R. 22.] Specifically, the ALJ stated,

> First of all, I note that despite [Plaintiff] alleging difficulty focusing and poor concentration, Dr. Mouzon's opinion is inconsistent with her physical examinations. Dr. Mouzon reported [Plaintiff] had appropriate affect and was goal-directed and logical. She was alert and oriented x 4. She had good impulse control, judgment, insight and memory. [Dr. Mouzon] does have a treating relationship with [Plaintiff], but there is minimal evidence to support her opinion. Further, [Plaintiff] has a very active lifestyle and [is] able to do most activities of daily living without interruption from physical or mental limitations. Finally, she admitted that at one point she was looking for work. The doctor's opinion contrasts sharply with the other evidence of record, which renders it less persuasive. I find [Plaintiff's] mental symptoms do not cause limitations to the extent she alleges. Again, Dr. Mouzon reported that her medications stabilize her mood.

[*Id.*]

Plaintiff has failed to direct the Court to record evidence sufficient to contradict the ALJ's findings, and upon review of the record, the Court concludes the ALJ's decision to assign little weight to Dr. Mouzon's May 18, 2010 assessment is supported by substantial evidence. Plaintiff argues the intermittent nature of Plaintiff's mental impairment—bipolar disorder—made it unlikely that Dr. Mouzon would observe Plaintiff's manic symptoms at any particular appointment. [Doc. 9 at 27.] However, Plaintiff has failed to direct the Court to record evidence, other than Plaintiff's testimony that some days are better than others [*id.*; *see* R. 91–92], to establish that Plaintiff did in fact experience manic periods. More importantly, Plaintiff has failed to direct the Court to evidence supporting Dr. Mouzon's May 18, 2010 opinion that Plaintiff experienced symptoms that would interfere with her ability to perform work-related activities.

Further, the Court has found that substantial evidence supports the ALJ's decision with respect to Dr. Mouzon's assessment. For example, in her summary assessment of May 18, 2010, Dr. Mouzon opined that Plaintiff "presents as predominantly manic, with pressured speech, rapid speech, flight of ideas, and unrealistic goal setting." [R. 421.] However, Dr. Mouzon never noted any of these conditions in Plaintiff's treatment notes; rather, Dr. Mouzon observed that Plaintiff's speech was normal, Plaintiff's thoughts were goal-directed and logical, and Plaintiff's impulse control, judgment, and insight were routinely "good," although they were sometimes "fair." [R. 348–54, 390–92, 402–14, 416–17.] As another example, Dr. Mouzon expressed in her May 2010 assessment that Plaintiff "does not put effort into her appearance" [R. 421], but Dr. Mouzon never noted this

in the treatment notes and, instead, nearly always noted Plaintiff was well-groomed[12] [R. 348, 350–54, 390–92, 402–14, 417].  Likewise, the Court has failed to locate support for Dr. Mouzon's remaining conclusions in her treatment notes or other record evidence. Therefore, the Court concludes the ALJ's decision to discount Dr. Mouzon's May 18, 2010 opinion is supported by substantial evidence, and Plaintiff is not entitled to a remand or an award of benefits based on the ALJ's decision to assign little weight to this opinion.

## CONCLUSION AND RECOMMENDATION

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be AFFIRMED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

September 27, 2012
Greenville, South Carolina

---

[12] Dr. Mouzon indicated in the treatment notes that Plaintiff was disheveled on August 31, 2007 and on November 14, 2003, which was shortly after Plaintiff's psychotic break.  [R. 349, 416.]